IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| TOMMY EUGENE DOTSON,<br>    Petitioner,<br><br>v.<br><br>NATHANIEL QUARTERMAN, Director,<br>Texas Department of Criminal Justice,<br>Correctional Institutions Division,<br>    Respondent. | §<br>§<br>§<br>§    Civil Action No. 4:06-CV-715-A<br>§<br>§<br>§<br>§<br>§ |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND NOTICE AND ORDER**

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

#### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

#### B. PARTIES

Petitioner Tommy Eugene Dotson, TDCJ #1176140, is a state prisoner in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Amarillo, Texas.

Respondent Nathaniel Quarterman is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

#### C. FACTUAL AND PROCEDURAL HISTORY

In January 2002 Dotson was charged by indictment in Case No. 0828421D in Tarrant

County, Texas, with murder in the death of Lori Sitko. (Clerk's R. at 8.) The indictment also contained a repeat offender notice. (*Id.*) Dotson was reindicted in Case No. 0890152R in May 2003. (*Id.* at 3-4.) The reindictment charged Dotson with murder in the death of Lori Sitko (count one), manslaughter (count two), and aggravated assault with a deadly weapon, a motor vehicle (count three). (*Id.*) The reindictment also included a repeat offender notice and a deadly weapon allegation. (*Id.*) Prior to trial in the 371st Judicial District Court, the state waived count three. (*Id.*) At the conclusion of the guilt/innocence phase, the state waived count two (manslaughter) but requested a jury charge on manslaughter as a lesser included offense. (Reporter's R., vol. 7, at 157-58.) On June 17, 2003, the jury found Dotson guilty of the lesser included offense of manslaughter. Thereafter, Dotson entered a plea of true to the repeat offender notice, and the trial court found Dotson had used a deadly weapon, a motor vehicle, during commission of the offense and assessed his punishment at forty years' confinement. (Clerk's R. at 342.)

Dotson appealed his conviction, but the Second District Court of Appeals of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused Dotson's petition for discretionary review. *Dotson v. Texas*, 146 S.W.3d 285 (Tex. App.–Fort Worth 2004); *Dotson v. Texas*, PDR No. 1702-04. Dotson did not seek writ of certiorari. (Petition at 3.) Dotson filed two state applications for writ of habeas corpus challenging his conviction. The first was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court. *Ex parte Dotson*, Application No. 64,619-01, at cover ("State Habeas R." referred to herein refers to the state court record in this action). The second was dismissed by the Texas Court of Criminal Appeals as successive. *Ex parte Dotson*, Application No. 64,619-003, at cover. Dotson filed this federal petition on October 3, 2006. *See Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998) (holding pro

se habeas petition filed when papers delivered to prison authorities for mailing).

The evidence elicited at trial reflected that Dotson and Sitko were both homeless. Sitco lived on the street and Dotson owned an RV he lived in and parked in various parking lots in the East Belknap area of Fort Worth. Dotson suffered from a debilitating foot condition and his left eye was cloudy. (Reporter's R., vol. 4, at 136.) Dotson and Sitko were acquainted with each other and occasionally associated with the same group of other homeless individuals. Sitko was known to be capable of defending herself on the street against women and men. (Reporter's R., vol. 5, at 129; Reporter's R., vol. 6, at 132.) Dotson asked Sitko to beat up another homeless woman known as Donna. Although Sitko did not commit the assault, she told Dotson she did it, and Dotson paid her $20. (Reporter's R., vol. 6, at 20, 102-06.) Two days before Sitko's death, on Thanksgiving Day, Dotson learned that Sitko had lied. That night, Dotson saw Sitko in a local bar, struck her in the face, and threatened to kill her if she did not return the $20. (Reporter's R., vol. 5, at 51-54, 206; Reporter's R., vol. 6, at 106-12, 123-24.) Sitko got up and threatened to kill Dotson if he hit her again. (Reporter's R., vol. 6, at 125.) The next morning, Sitko told Harry Passwater, a friend, of Dotson's actions, and the two went to Dotson's RV. Passwater entered the RV unannounced and attacked and beat Dotson. (Reporter's R., vol. 5, at 207-28.) Dotson called the police. A short time later, Passwater was approached and questioned by a Fort Worth police officer. Passwater admitted that he went into Dotson's RV and beat him but explained he did so because Dotson had hit Sitko. (*Id.* at 212, 228-30; Reporter's R., vol. 6, at 47-70.) Passwater was issued a citation but was not arrested. (Reporter's R., vol. 6, at 57-70.) In the afternoon of November 24, 2001, the following day, Sitko and Jeffrey Adkins, another homeless individual, were walking toward downtown when Sitko picked up a board, entered the parking lot where Dotson had parked his RV, and began waving

3

the board as she approached the RV. (Reporter's R., vol. 7, at 18-42.) Dotson started the vehicle and drove toward Sitko, striking her, and running over her body. (*Id.*) Sitko died at the scene. Two witnesses observed Dotson run over Sitko. (Reporter's R., vol. 4, at 39, 159; Reporter's R., vol. 7, at 18-42.) Dotson was arrested shortly thereafter. In jail, Dotson told another inmate that Sitko was approaching his RV with a board, that he dropped the vehicle in low gear and gunned it, that he swerved into Sitko, and that he could feel the rear tires run over her. (Reporter's R., vol. 7, at 78-84.) Dotson's defensive strategy at trial, rejected by the jury, was that he acted in self-defense and/or out of necessity.

D. ISSUES

Dotson raises the following grounds for relief: (1) he was denied due process by the trial court's failure to hold a hearing on his motion for new trial; (2) he was denied an impartial jury due to prosecutorial misconduct; (3) he was denied due process by the trial court's inclusion of a lesser included offense instruction; (4) his conviction was obtained in violation of double jeopardy; and (5) he was denied due process by the trial court's entry of an affirmative weapon finding over his objection. (Petition at 7-8.

E. RULE 5 STATEMENT

Quarterman believes Dotson has sufficiently exhausted available state remedies with regard to his claims as required by 28 U.S.C. § 2254(b)(1)(A) but that one or more of his claims are procedurally barred. (Resp't Answer at 4, 11.)

F. DISCUSSION

1. Legal Standard for Granting Habeas Corpus Relief

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant

4

to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The statute further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. 28 U.S.C. § 2254(e)(1). The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits, which is entitled to the presumption of correctness. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

### 2. Due Process Violations

Dotson claims his due process rights were violated by the trial court's inclusion of a lesser

5

included offense instruction on manslaughter in the jury charge (**ground three**), entry of an affirmative deadly weapon finding in the court's judgment (**ground five**), and failure to hold a hearing on his motion for new trial (**ground one**). (Petition at 7-8.) These issues were raised on direct appeal and rejected by the state courts. Thus, Dotson must show that the state courts' adjudication of the issues resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state courts. 28 U.S.C. § 2254(d).

Dotson claims the trial court violated his right to due process and a fair trial by including a lesser included offense instruction on manslaughter, over his objection, because there was no evidence of the element of recklessness. Specifically, he argues there was no evidence that he is blind in one eye and was intoxicated at the time of the offense, the arguments relied upon by the state to justify a guilty finding on the lesser included offense. (Pet'r Memorandum at 21-24.) Under Texas law, a party is entitled to a lesser included charge when it is a lesser included offense of the offense charged in the indictment and the record includes some evidence to permit a rational jury to find that, if guilty, the defendant is guilt only of the lesser offense but not guilty of the greater. *See Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); *Rousseau v. State*, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993).

Manslaughter is a lesser included offense of murder. *See McKinney v. Texas*, 207 S.W.3d 366, 370 (Tex. Crim. App. 2006); *Moore v. Texas*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998). "A person commits manslaughter if he recklessly causes the death of an individual." TEX. PENAL CODE ANN. § 19.04(a) (Vernon 2003). "A person acts recklessly, or is reckless, with respect to

circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* § 6.03(c). Applying the *Jackson v. Virginia* sufficiency-of-the-evidence standard to the evidence, and deferring to the jury's implied credibility determinations, the appellate court determined that a rational jury could have found the essential elements of manslaughter beyond a reasonable doubt and could have found against Dotson on both the necessity and self-defense issues beyond a reasonable doubt. *Dotson*, 146 S.W.3d at 293-295. Having independently reviewed the record, it appears the state courts correctly applied *Jackson*, and the state courts' adjudication of the claim is reasonable in light of the evidence presented at Dotson's trial. (Reporter's R., vol. 4, at 126, 129-30, 136-40.)

Dotson claims his right to due process was violated by the trial court's entry of an affirmative deadly weapon finding because he was convicted of manslaughter by *recklessness*, and not *intentional* murder. He further claims the state, having proceeded on only count one, had waived "everything else" in the indictment, including the deadly weapon allegation, and, thus, he had no notice of the state's intention to seek a deadly weapon finding. (Pet'r Memorandum at 31-35.) The state appellate court, interpreting state statutory law, concluded that the relevant statute does not require that the actor actually intend death or serious bodily injury but also encompassed conduct that threatens deadly force. *Dotson*, 146 S.W.3d at 299-300; TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (Vernon Supp. 2006). A federal court will not review a state court's interpretation of its own law. *See Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995). Further, as a matter of federal constitutional due process, a criminal defendant is entitled to notice of the state's intention to seek a deadly weapon finding. *Cole v. Arkansas*, 333 U.S. 196, 201 (1948); *Ables v. Scott*, 73

7

F.3d 591, 593 (5th Cir. 1996); *Ex parte Huskins*, 176 S.W.3d 818, 820 (Tex. Crim. App. 2005). Dotson received constitutionally adequate notice of the state's intention to do so. Contrary to his assertion, the record reflects the state waived only counts two and three of the reindictment. (Clerk's R. at 3-4.) There was a separate repeat offender notice and a separate deadly weapon allegation, to which Dotson pled true and not true, respectively, prior to the sentencing phase of his trial. (*Id.*; Reporter's R., vol. 8, at 9-10.) Thus, he was on notice as early as May 2003, the date of the reindictment, that the state intended to seek a deadly weapon finding. (*Id.*) The question of whether the state trial court had the authority to make such a finding is a question of state law and is not cognizable in federal habeas review.[1]

Dotson claims his due process rights were violated by the trial court's failure to hold a hearing on his motion for new trial, alleging jury misconduct. (Pet'r Memorandum at 8-16.) In Texas, juror misconduct is governed by Rule 21.3 of the Texas Rules of Appellate Procedure and Rule 606(b) of the Texas Rules of Evidence. This claim merely attacks a defect in state procedures and fails to raise a federal constitutional issue cognizable on federal habeas corpus review. *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir.1998). Further, the state appellate court held that the motion was not sufficient to trigger the hearing requirement. *Dotson*, 146 S.W.3d at 300-01. A federal court in a habeas review of a state court conviction cannot review state rulings on state law that do not present a federal constitutional question. *Gibbs v. Johnson*, 154 F.3d 253, 259 (5th Cir. 1998).

---

[1]Under Texas law, a defendant who fails to elect the jury to assess punishment leaves all questions to be considered in the punishment phase to the trial court. *See Tinney v. Texas*, 578 S.W.2d 137, 139 (Tex. Crim. App. 1979). Therefore, the trial court as the fact-finder on punishment had the authority to make a deadly weapon finding as long as the jury has not already decided the issue at the guilt-innocence phase. *Fann v. Texas*, 702 S.W.2d 602, 604 (Tex. Crim. App. 1986) (op. on reh'g); *Umoja v. Texas*, 965 S.W.2d 3, 10 (Tex. App.–Fort Worth 1997, no pet.).

3. Procedural Default

Dotson claims he was denied an impartial jury due to prosecutorial misconduct (**ground two**). (Petition at 7; Pet'r Memorandum at 17-20.) Specifically, he contends his conviction for manslaughter was the result of the prosecution's improper jury argument during the state's closing argument that Dotson drove while "blind in one eye and bombed off of his gourd because he was blowing a 2.0 four hours later," when there was no evidence that he was blind in one eye, intoxicated, or that a breath test was ever given. (Petition at 7; Reporter's R, vol. 7, at 201.) Dotson also claims his conviction for manslaughter violated the double jeopardy clause because the state waived count two, alleging manslaughter, after jeopardy attached and then requested a lesser included offense instruction on manslaughter as a lesser included offense (**ground four**). (Petition at 7; Pet'r Memorandum at 27-30.)

Applicant's seeking habeas corpus relief under § 2254 are required to exhaust all claims in state court before requesting federal collateral relief. 28 U.S.C. § 2254(b)(1), ©); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999). This requires that the state court be given a fair opportunity to pass on the claim, which in turn requires that the applicant present his claims before the state courts in a procedurally proper manner according to the rules of the state courts. *Depuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

Dotson filed his first state habeas application on April 19, 2005, and asserted thirteen grounds therein. (State Habeas R. at 2.) He raised his double-jeopardy claim for the first time in an "amendment" to include a fourteenth ground filed on August 22, 2005, after the state had already filed a response but before the habeas court entered its findings, conclusions, and recommendations. (*Id.* at 60.) Thereafter, on October 5, 2005, Dotson filed a second "amendment" to include a

10

fifteenth ground (improper jury argument) to the habeas application and a modified application to include grounds fourteen and fifteen. (*Id.* at 67, 71.) Nothing in the record, however, reflects that the state courts granted him leave or permission to amend his initial state application or that the state courts considered the claims on the merits in the initial habeas proceeding. The trial court did not address the claims, and the Texas Court of Criminal Appeals denied the application without written order on the findings of the trial court. Further, Dotson's second habeas application, filed on July 3, 2006, again raising his double-jeopardy claim, was dismissed by the Texas Court of Criminal Appeals as successive. *Ex parte Dotson*, Application No. WR-64,619-03, at cover; TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4 (Vernon 2005). The Texas abuse-of-the-writ doctrine prohibits a successive state habeas petition, absent a showing of cause, if the applicant urges grounds that could have been, but were not, properly raised in his first habeas petition. *See Ex parte Barber*, 879 S.W.2d 889, 891 n.1 (Tex. Crim. App. 1994). This doctrine is an adequate state procedural bar for purposes of federal habeas review. *See Emery v. Johnson*, 139 F.3d 191, 195 (5th Cir. 1997); *Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997).

Because Dotson failed to present the claims according to the rules of the state courts, the state courts were deprived of a fair opportunity to consider the merits of the claims and the claims are unexhausted for purposes of federal habeas review. *See Martinez v. Johnson*, 255 F.3d 229, 238 (5th Cir.2001); *Alexander v. Johnson*, 163 F.3d 906, 908-09 (5th Cir.1998). Federal habeas corpus relief is unavailable in the face of an adequate and independent state procedural default unless the petitioner can show either (1) cause for the default and actual prejudice, or (2) that the federal court's failure to consider the claim will result in a miscarriage of justice, i.e., that the petitioner is actually innocent of the crime or of the sentence imposed. *See Sawyer v. Whitley*, 505 U.S. 333,

11

339-40 (1992); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Finley v. Johnson*, 243 F.3d 215, 219-20 (5th Cir. 2001). Absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated, Dotson's claims in grounds three and four are procedurally barred from this court's review.

## II. RECOMMENDATION

Dotson's petition for writ of habeas corpus should be DENIED.

## III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within ten (10) days after the party has been served with a copy of this document. The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until November 14, 2007. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(B)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual finding or legal conclusion accepted by the United States District Judge. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc op. on reh'g); *Carter v. Collins*, 918 F.2d 1198, 1203 (5th Cir. 1990).

## IV.  ORDER

Under 28 U.S.C. § 636, it is ORDERED that each party is granted until November 14, 2007, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation.  It is further ORDERED that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED October 24, 2007.

      /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE